Please the court. I'm Christopher Avery for the City, or as it was referenced earlier, Country of Tucson. This is a case from the Occupy movement about the accumulation of all manner of personal property, mostly blankets, on public sidewalks. Plaintiffs sought a preliminary injunction to accommodate, and I quote here, no matter how much personal property is collected around them on the city's streets and sidewalks. The first question presented is whether plaintiffs here have the right to obstruct all but 5 feet of Tucson sidewalks with an unlimited amount of collected personal property while asserting First Amendment rights. Now the ordinance creates that 7 feet that they can use and 5 feet that must remain unobstructed, right? The ordinance, which is an exception to the sit-lie ordinance, creates 5 feet that must be left open. If the sidewalk is 12 feet wide, which it is in this particular case, then 7 feet can be used to sit-lie down. Now this injunction relates to a particular sidewalk? This injunction is limited to a particular sidewalk, but there are thousands of linear feet of sidewalks that fall within the zones encompassed in the sit-lie ordinance. Not affected by the injunction? Not affected by the injunction, but because the reasoning is the same, it would be a perilous position for the city to treat. Is this a sidewalk next to some park? This is a sidewalk next to a pocket park that's located in the median between two streets in downtown Tucson. That little triangle park with the statue of the infamous invader, Pancho Villa. Congress goes one way and Broadway goes the other? Yes, exactly. He was sent here by the government as one of those rapists? Not at all. So the first question presented is do the plaintiffs have the right to obstruct the sidewalk with an unlimited amount of collected personal property while exercising First Amendment rights? The second question is what are the rules that the city has to apply when this property is accumulated in violation of the city codes? May the city collect and store it before it is abandoned under Levan v. Los Angeles without violating the Fourth Amendment prohibition against unreasonable seizures? Well, we're really talking about the 3B policy, right? Yes, we are, Your Honor. Okay. So in ñ and that's just fairly recently passed, right? So when this injunction ñ I mean, an argument can be made on this injunction that it maintains the status quo while the constitutionality of 3B is being tested, right? The argument can be made that the 3B policy is the city's exercise of discretion in applying the statutes. The question of whether the statutes are correctly applied is a question of law, and that's what we're appealing, Your Honor. Well, my concern here is, I don't know, Levan v. the city of L.A.? Yes. If you recall, I wrote a dissent on that, but ñ Okay. And so I recall that, and I think someone else here was in the majority. So that being said, I'm bound by the majority here, and it concerns me here that some of the issues in there, you know, are going to be problematic here. In the Levan case, Judge Callahan and Judge Reinhart, you were also on the panel. The city of Los Angeles had a policy of both seizing and destroying property immediately for violations of a Los Angeles municipal code that's essentially the same as the city ordinances that are at issue here. In this case, in the Levan case in the district court below, the district court expressly held that the seizures would not have been unreasonable if the city of Los Angeles had collected the property in conformance with Los Angeles's or the city of California's rules regarding found property. What the court held in Levan was that it was the seizure and the immediate destruction that rendered a Fourth Amendment violation in that case. In this case ñ Judge Brey says that applies to Tucson, right? Yes, and that's a clear error of law in this preliminary injunction because under the Levan case as well as under many other cases that have considered Levan issues, it is permissible for the city to collect property that is stored on public spaces or in public spaces in violation of city codes as long as it conforms with basic due process in returning that property to its owners, and that's what's happened here. Well, and some people were complaining, I guess, that they couldn't get it back or if they went there that they wouldn't, you know, as far as that goes. And, Your Honor, one of the issues with Levan is because Levan is a basically immediate seize-it-destroy-it case, there's not a lot of guidance in the Levan case about what procedures need to be followed in the case where property is collected, placed into found property, and available for return by its owner. In this case, what ñ Are you talking about the Tucson ordinance itself providing, you know, some procedure for, you know, preserving and returning the property? Yes, the state of Arizona as well as the city of Tucson police followed the state of Arizona statutes regarding found or unclaimed property, which in Arizona, in Los Angeles, and the injunction in the Levan case had a 90-day storage period. In Arizona, that statutory period is 30 days, and that's the period of time that the city of Tucson holds property in this case. I don't see really why there's any need to reach any of that. If I understand this injunction, we're talking about one sidewalk where the rule is that the ñ this activity can be considered ñ I mean, it can be conducted on 7 feet out of the 12. Yes. And on that 7 feet, the people can have certain property. The only question is what kind of property can they have? They can have an unlimited amount of property on that 7 feet. So they can have ñ the question would be what property they might properly have under the ordinance. It's not a question of property being all over the whole sidewalk. It's being under the 7 feet where people are conducting First Amendment activities and what property is incidental to that or necessary to it or related to it. And it's really a question of whether you can seize it and destroy it or anything like that. You can't take it at all if they're right, and if they're wrong, it'll be determined. But we're talking about a very narrow use of certain property on that 7 feet. There's no disagreement that some property can be kept so that these people can occupy that part of the sidewalk. The question is can it be ñ should it be limited to the B, B, and B, or should it be broader than that? Your Honor, the 3B policy is a policy by the city regarding the interpretation of the statutes. There is a statute, there is a sit-lie ordinance in Tucson that's almost identical, virtually identical to the sit-lie ordinance that this Court considered in Roulette and that this Court also considered in Amster. In addition, the city has a series of two ordinances that prevent precluding any item or object on the sidewalk. In this case, Your Honor, the district court committed ñ Read those three ordinances together. When you read those three ordinances together, there's two things that need to be looked at. The first is that the sit-lie ordinance applies to people. It applies ñ people can ñ in Tucson, people have the right to sit on the sidewalk who are exercising First Amendment rights in downtown Tucson. They have a right to lie down on the sidewalk when they're exercising First Amendment rights in downtown Tucson. But that ñ That's not an issue here in this case. That's not an issue in this case. And they've been determined to be constitutional for your purposes. Right. But 3B is the one that we're talking about. But they ñ they ñ the sidewalk obstruction ordinances don't apply to people. They apply to things. They apply to boxes and crates and fruit and hay and other inanimate objects. Even if this Court decides that the sit-lie ordinance applies to people who are accompanied by things, the exception in the sit-lie ordinance only applies for 15 hours a day. So when the ñ the sit-lie ordinance essentially expires every night at 10 o'clock and is revived again every morning at 7. Between 10 o'clock at night and 7 o'clock in the morning, the sit-lie ordinance doesn't exist at all. The city of Tucson's sidewalk obstruction ordinances exist between 10 o'clock at night and 7 o'clock in the morning. And those sidewalk obstruction ordinances are constitutional. The only way that the district court's ruling can be affirmed in this case is if this Court finds that those obstruction ordinances, which by any measure of statutory construction apply without any interference from the sit-lie ordinance from 10 o'clock at night to 7 in the morning, are either vague, as the district court suggested after expressly ruling that they weren't, or that they are not a reasonable time, place, and manner restriction of First Amendment activity. And it's clear from the case law ñ Kagan. Well, the ñ the supreme court hasn't said they're constitutional, right? The district court has held ñ The district court has. The district court has held they're constitutional.  So if ñ if this Court were to find that the obstruction ñ sidewalk obstruction ordinances are vague or unconstitutional, then the district court's order can be affirmed. Otherwise, it can't. And ñ Well, we could ñ we can just say here, because 3b hasn't ñ the constitutionality of that is part of ñ it's being litigated in the district court, right? So we just have to ñ we just have to review the preliminary injunction, right? You have to decide. The district court interpreted those statutes as a matter of law. So this is purely a legal question. Well, you say it only applies to certain hours? Yes. Except for a person who's engaging, exercising First Amendment rights. The three ñ the sit-lie ordinance only applies from ñ it only precludes people from sitting or lying on sidewalks starting at 7 o'clock in the morning, expires at 10 o'clock at night. But section B says the prohibition in subsection A does not apply to anyone who's exercising First Amendment rights. Exactly. But the sit-lie ordinance itself, which precludes this activity, only applies from 7 o'clock in the morning until 10 o'clock at night. So it's like having an ordinance in a ski town that only applies when winter visitors are there. Well, but I think the point here is that, okay, nothing ñ you're never going to be able to ñ basically, the elephant in the room here is that people ñ that people are complaining about that they have a bunch of homeless people with all of their stuff on the sidewalk, and it's interfering with a lot of things. But homeless people can also have First Amendment rights. Exactly. And so ñ and so, I mean, basically what they're saying is, if you're homeless and you've got to take everything around in your cart or whatever you've got, the only way that you can exercise those First Amendment rights is to keep your stuff with you unless there's some way to safely ñ And yesterday afternoon, I spent some time in the lounge, and Judge Browning ñ there's a nice poster about Judge Browning and how Judge Browning's one of his signature accomplishments was to find access to the courts. People have a First Amendment right to go to court. They have a First Amendment right to go to criminal proceedings. That doesn't mean a homeless person has the right to bring all of his stuff into court in order to watch a criminal proceeding. Are you saying that the homeless people can't exercise their rights, including sleeping, lying on that sidewalk, 7 feet out of 12, 24 hours a day? I'm saying they can. They can? They can. And the way the city interprets the statute is that as long as they're accompanied ñ I don't understand what you're saying, can or can't. They can. They may. Homeless people may exercise their rights. The question is what property they can have with them on that 7 feet. Yes. And in order to ñ the 3B policy is a policy that allows people to have more property than the obstruction ordinances would otherwise permit. The sit-lie ordinance ñ and this Court talked about it at length in Roulette. Sit-lie ordinances apply to people. Furthermore, there's a whole set of case law from this Court's decision in the ACLU v. Nevada case holding that at least some of these items of personal property have no expressive component whatsoever. And the district court punted entirely on that question, which is the most central question in this case. District court says, I'm not going to tell you whether anything that's related to this Occupy encampment is expressive at all. It's up to you to decide using the Spence test. That's about as useful as telling me that the sun is going to rise in the east. Let me ask the question a little bit differently. Yeah. What exactly ñ what provision of the injunction is it that the city believes is invalid? The city believes that even if this Court decides ñ the city believes that the injunction relating to the 3B policy is invalid, and the city believes that the part ñ Is invalid? The part of the injunction precluding the city from applying the 3B policy is invalid as a matter of law. Even if this Court were to find that the sit-lie ordinance overwhelms the obstruction ordinances during the time period when they're in effect together, there's still a period between 10 o'clock at night and 7 o'clock in the morning when the sit-lie ordinance doesn't apply, the sidewalk obstruction ordinances do. It doesn't apply except to people who have exercised ñ No, it doesn't apply at all. Well, what does Section B mean when it says that Section A doesn't apply? Because the sit-lie ordinance ñ so this is an exception to an ordinance that only applies for 15 hours a day. Or it overrides that ordinance. Well, then you're ñ then you're committing judicial legislation, because between 10 o'clock at night ñ No, if we read it your way, we're not. If we read it the way the district judge did, we are. And so what I'm saying is the obstruction ordinances are valid limitations on First Amendment conduct. They've been upheld. The Supreme Court referenced them just last summer in the McClellan v. Coakley case. There are ñ all you have to do is interpret the ordinances. And, you know, we don't have to settle a constitutional issue. Exactly what we're asking you. And if you read the sit-lie ordinance, which is including Section B, as creating an exception for First Amendment activity, then it's just a question of how you interpret the ordinances. Does ñ when you can conduct First Amendment activity 24 hours a day by sitting, lying, doing whatever you want for homeless people, the question is, can they have certain property with them? And you say, yes, they can have certain property with them, the B, B, and B. And the district court says, well, for purposes of this preliminary injunction, they can have any of their property unless you conclude it's not related to their First Amendment activity. Yes. If they, you know, buy a stand where they sell property from for a profit-making thing, you could take it. If it's something they need in order to conduct their activity, more than just ñ what is it, a blanket? A bedroll, a backpack, and a blanket, Your Honor. And that's ñ those are ñ Well, if there's more than they need to occupy that property, then it's connected to ñ I'm not saying he's right, but I'm saying this is a preliminary injunction in which he says that anything that's related to the First Amendment activity, which includes a homeless person occupying that limited portion of one sidewalk. And what I'm saying, Your Honor, is that that exception for First Amendment activity, even if you agree that that exception applies as against the obstruction ordinances, that amendment expires every night at 10 o'clock. It doesn't for people conducting First Amendment? No, it does. If you read the ordinance, the sit-lie ordinance is only ñ precludes people from sitting or lying down on sidewalks in Tucson from 7 o'clock in the morning until 10 o'clock at night. And it has an exception for First Amendment activity. That means every night at 10 o'clock, this ordinance dies. Except for First Amendment activity. No. The ordinance itself dies because the exception for First Amendment activity is an exception to the ordinance. It is not a separate, stand-alone ordinance. The obstruction statutes, however ñ and the sit-lie ordinance only applies in three discrete locations in the City of Tucson. The obstruction ordinances apply on every Okay. And when you say ñ when you say obstruction ordinance, what ordinance are you applying to? There's section ñ there's two. Is that a statewide statute? No. There are two obstruction ordinances in the City, Section 1635 and Section 2551. Both of them preclude obstructing the sidewalks with any item or thing to prevent the full use of the sidewalk. The City's position in this matter is that the exception applies to people because people can move. Well, when you say the exception, what exception are you talking about? The exception to the sit-lie ordinance applies to people. All right. The sit-lie ordinance itself applies to people, and therefore the exception in the sit-lie ordinance applies to people. People can sit down and obstruct the sidewalk. They can conduct die-ins. They can conduct sit-ins. They can conduct plays. They can do all they want. Tell them about people. People. Who are exercising their First Amendment rights. Exercising First Amendment rights. Go ahead. But they can't put seven feet of stuff on the sidewalk. You're saying they can't have any property. Yes. In order to conduct their First Amendment rights. Yes. And those obstruction ordinances are long-standing ordinances that, for example, if you look at the McClellan v. Coakley case from last summer, which is an old-fashioned, we're going to restrict abortion case in certain areas, the Court strikes down the abortion rules in Massachusetts but says, hey, look, the State can always use the obstruction ordinances to limit this kind of behavior. There's no question in this case about whether the obstruction ordinances are valid. For example... Well, just a minute. And what does Judge Bury's injunction say about the obstruction ordinance? Judge Bury's ordinance says the obstruction ordinances are vague. They don't have any clear standard for what obstruction is. So he never construed them at all. He just said the sit-lie ordinance applies against them, ignoring the fact that the sit-lie ordinance dies every night at 10 o'clock. I think we've let you run over. Well over, yes, Your Honor. Thank you. Are there any more questions? Good afternoon, Your Honors, and may it please the Court. I'm Carl Sammartino. I represent Mr. Cooper and Mr. McClain, the plaintiffs below and the appellees here. I want to start by saying that, of course, we believe that this Court should affirm the District Court, and the reasons why were discussed just this afternoon in the oral argument presented already by Mr. Avery. There are many types of interlocutory appeals, different States in which the Court here is in media race, and I think it's important to go through the evolution of this case factually and procedurally in order to understand where we stand today. So what activity is this enjoining specifically, and how does that alter the status quo? It enjoins the City from enforcing the obstruction ordinances when Cooper and McClain are exercising their First Amendment rights on the remaining seven feet of the Viente de Augusto sidewalk. But the obstruction ordinances don't apply to whatever Cooper and McClain do. They only apply to inanimate objects, right? They apply to obstruction of the sidewalk. The obstruction ordinances say you can't obstruct the sidewalk. No, but obstruct it not by standing there, but by putting things there. Isn't that right? Correct. They criminalize conduct, placing things on the ground so as to obstruct the free, full, and public use of the sidewalk. Now, is it your position that placing things on the sidewalk is part of the First Amendment activity? For homeless people, it is, and that's in roulette. Because in roulette, in particular, the portion of the dissent from the denial of the rehearing on Bonk pointed out that the majority opinion is giving us a new rule, a new dichotomy between the standard by which we judge speech for facial attacks and as-applied attacks. But squarely, in an as-applied challenge, the issue of whether a person is exercising his or her First Amendment rights is one that needs to be examined as applicable to that person. So are you bringing an on-the-face or as-applies to 3B? It's only as-applied now. The district court ruled against Cooper and McClain's facial challenge to the statute. So we're in that. But that's a theory of the dissent. That's a theory of the dissent. But it points out that in the majority opinion in footnote 7 and footnote 10. But the dissent is now binding authority on us. Correct. But what I'm relying on is not the dissent, but the majority opinion's footnotes to the majority opinion. We're talking about roulette? Roulette. Okay, go ahead. And footnote 2 says what? Footnote 7 and footnote 10. Footnote 7 talks about a gentleman who was on the sidewalk playing a keyboard, and he might have needed a chair to sit at his keyboard in order to propagate his speech. And the court says, we're not expressing any opinion as to, in this particular circumstance, whether this gentleman's need for a chair is part of facilitating his speech conduct. And then in footnote 10, it gets to that same discussion in Clark that's never really closed and says, nothing in this opinion forecloses the ability to bring an as-applied challenge when a person proves that he or she needs the materials that in this case we're saying are not speech in order to be an effective First Amendment actor. So in this case, the judge in the district court found the stuff is necessary. A homeless person brings his or her stuff along. And the 3B policy is unduly restrictive. It's a blanket. In Tucson, we actually do still get cold enough nights that you might want two. You get one backpack. Homeless people, by this policy, are restricted to having one backpack. And if you were so lucky as a homeless person to ever accumulate enough stuff to have an additional change of clothing, you would be prohibited by this policy from having it. Stuff that wouldn't fit in a backpack, a musical instrument, guitar, umbrella. Bottom line is that the evidence in front of the district court showed that homeless people were being restricted from exercising their First Amendment rights. There was a long discussion about the ability of the district court to take the five-foot rule and apply that against the obstruction ordinances of 16-35 and 25-51. I think what's important is that the district court took into account all the evidence in front of it and didn't say, this is how the city's ordinances will be applied across the city of Tucson. But the district court said, what's happening is we have two people who are occupying a public sidewalk, and they are trying to exercise their First Amendment rights, but they're not being allowed to because the city is confiscating their property, particularly their blankets. So, particularly what? Particularly their blankets and a water cooler, in another instance. And the district court judge said, so what I'm going to do is I'm going to examine whether, in fact, they're actually obstructing the sidewalk. And there was testimony in front of the district judge that said, in which I asked a police officer, well, do you look at whether people are having a hard time getting by this stuff? Do you look at whether or not it's actually obstructing the sidewalk? And the police officer said, no, what I look at is whether it's there or not. Just whether it's placed on the sidewalk or not is the police officer's definition of whether it's an obstruction. And that's how the city would want this court and the district court to interpret the ordinance. But the district court held, no, it needs to be an actual obstruction. And so what I'm going to do is preserve the status quo by saying, I'm going to divide the bedroom down the middle. There is a line on the sidewalk with five feet where pedestrians can pass. Five feet, coincidentally, is the amount of space that cities need to leave for Americans with Disabilities Act compliant sidewalks. However much is remaining of this sidewalk, and in this case, the Vientia de Augusto sidewalk is 12 feet, so it's an additional seven feet. McLean and Cooper can use that area of the sidewalk only when they're exercising their First Amendment rights. Well, how are you ever going to know? They're always going to be exercising their First Amendment rights. I mean, I think that's part of the problem, that some people probably think that they're not really, that they're just. . . But that being said, I don't think we would ever want to put police officers in a position of deciding, do you really believe that, or, you know. . . And I think that I would rather not have that either. Well, it just wouldn't work, because how do you know whether someone really believes it or they're doing it, unless they went and said, hey, you've got to move on, buddy, and they said, hey, I'm just sleeping here, and, you know, and they admit everything that, well, they're not really exercising their First Amendment rights. And fortunately, in this case, we got a little more clarity, and there wasn't any supplemental letter issued to this Court about this, but counsel for the plaintiff can, or the city can tell you whether I'm being accurate or not. The city of Tucson asked for a clarification of Judge Berry's preliminary injunction, and the plaintiffs, Cooper and McLean, I pointed out that the preliminary injunction only applies when Cooper and McLean are exercising their First Amendment rights. I also pointed out that in their affidavits that they submitted, the First Amendment activities they were engaged in were protesting audibly to passersby, distributing literature, and displaying signs. So I think in this instance, it's not that Cooper and McLean are claiming the unfettered right to sleep passively on the sidewalk. They're claiming the right to actually engage in more typical First Amendment expression, but also not to be rousted if they stop. Can you respond to the city's attorney in talking about how from 7 to 10 and then the other time when that it doesn't apply at all? Correct. Your Honor, I would agree that what the city ordinance says is you are not allowed to sit or lie on a sidewalk in Tucson in these areas from 7 o'clock in the morning until 10 o'clock at night. But you are allowed to sit on the sidewalk from 7 o'clock in the morning to 10 o'clock at night if you leave five feet of space and if you're exercising your First Amendment rights. But after 10 o'clock, there is no five-foot rule that needs to be adjudicated. So why do I still think it's justifiable for Judge Barry to use that five-foot rule in his preliminary injunction order? The reason why is because the judge has the duty to craft an injunction that preserves the status quo that's using the judge's equitable power. He's not saying this is how the statutes work. What Judge Barry is saying is this is an injunction that will preserve the status quo. The evidence that Cooper and McLean presented But also encapsulated in that, you know, when you go through what is the winter factors or whatever, there has to be a likelihood of success. So there has to be some belief that that is how the statutes work. Correct. I don't think that it's the judge's belief that that's how the statute works, because regardless of whether there's a city ordinance with an exception that allows First Amendment activity, my clients have a right to engage in First Amendment activity. Well, you go farther than that, but, you know, we don't necessarily have to decide a constitutional question. That's correct. All we have to do is to decide something that avoids deciding a constitutional question. I think that one question that the city raises that I'm admitting we do have to engage is whether it's speech. And once you get past that, then enforcing the obstruction ordinances infringes on a First Amendment right. So if it's an expressive activity, you mean? It's facilitative conduct to expressive activity that warrants protection. I'm pretty sure Justice Scalia would say no, but I don't know what the whole Supreme Court would say. I agree. It would be an interesting discussion. Justice Scalia would say definitively not. Unfortunately, we don't have to decide that issue on a constitutional question on a preliminary injunction. I don't think that it should be decided. I think that this case is so new, despite being two years old, for various reasons. But I think that this case has a long way to go to have the issues finally determined, and deciding at this point the constitutional question of whether these plaintiffs needed these particular items, what items they were, and what items the police were confiscating isn't what should be done. What should be done is some interim rule that prevents me from drafting a Fourth and Fifth and Sixth and Seventh Amendment complaint because my clients are coming to me and telling me, we got arrested again. We got arrested again. Remember, the judge was faced with a motion for a third amended complaint at the same time I applied for a preliminary injunction because my clients had new allegations that occurred post-complaint about arrests on the sidewalk. So to give some peace to the process and allow it to be resolved, I think that the Court made a wise decision to issue the injunction. I'll yield the balance of my time. Thank you. Let me ask one question. This injunction was issued late last year, right? Is this still an active case? Yes, it is, Your Honor. In other words, are the two plaintiffs still exercising their First Amendment rights around this park? Intermittently, but yes, Your Honor. They, the city of Tucson closed the park that adjoins the sidewalk, preventing anybody from being in the park. So in summer, which is not kind to people who spend all their time outdoors in Tucson and the fact that the shaded area of the park is closed has meant that this has become more of a dormant issue, but they still do intermittently occupy the sidewalk. So it's not moot. They haven't moved. No, it's not moot. They still intend to occupy, do occupy, and, yes, on a fairly regular basis, but not 24 hours a day as they had been in the past. And then the case is ongoing. In other words, whatever happened to this appeal, I mean, you intend to go ahead with what you're seeking, a permanent injunction, right? A permanent injunction and perhaps damages. There are other aspects to the case. Thank you. Thank you. Thank you. You were over time, but we'll give you a minute. I would like, first of all, I would like to say that I think Mr. San Martino correctly characterized the nature of the ordinance for you and the clarification that occurred later. I would like to point out the question about whether homeless people need their possessions in order to exercise their First Amendment rights is almost identical to the issue that was raised in the White House Vigil case and in the Jalouki case that was decided by the D.C. Circuit that I've cited in my briefs. Basically, the ordinance there was an ordinance that was around the White House that said you can't put any parcel of any kind or size whatsoever on the sidewalk. And people said, hey, we can't protest if we have medical conditions, if we're elderly or whatever. And the Court said, first of all, you can use facilitators. Second, even if you can't use facilitators, you have a meaningful opportunity to protest. The City has always said in this case, by virtue of the application of the 3B policy, that homeless individuals in the City of Tucson have a right to use the sidewalks 24 hours a day, 7 days a week for First Amendment activity, because we don't decide whether it's First Amendment activity. You have a right to be on the sidewalk 24 hours a day, 7 days a week with a bedroll, a blanket, and a backpack, without having the police interfere with you in any way whatsoever. But the City needs to, because this is a homeless camp, Occupy Tucson wants to set up a camp on the sidewalk. We need the ability to prevent the amount of extra things from accumulating on the sidewalk, while preserving the sidewalks for First Amendment activity, as our City Council has intended. Thank you very much. Thank you, Counsel. The case, as argued, will be submitted.
judges: Reinhardt, Tashima, Callahan